UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN H. BARTON,

       Plaintiff,

v.                                                                    Case No. 09-13750
                                                                      Honorable Patrick J. Duggan

UNITED STATES POSTAL SERVICE,
and POSTMASTER GENERAL
JOHN E. POTTER,

       Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on February 10, 2011.

PRESENT:   THE HONORABLE PATRICK J. DUGGAN
U.S. DISTRICT COURT JUDGE

On September 22, 2009, Plaintiff filed this lawsuit against Defendants complaining

about the treatment he has received as an employee of the United States Postal Service.

Plaintiff filed an amended complaint on September 23, 2009, in which he alleges age

discrimination and retaliation in violation of the Age Discrimination in Employment Act

("ADEA") (Counts 1 and 2) and harassment and hostile work environment (Count 3).  On

August 11, 2010, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(6) and for summary judgment pursuant to Rule 56(c).  On November 24,

2010, after the motion was fully briefed, the matter was re-assigned from the Honorable

John Feikens to the undersigned pursuant to Administrative Order 10-AO-033.  The
Court held a hearing with respect to Defendants' motion on February 3, 2011.

## I.      Applicable Standards

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the
legal sufficiency of the complaint.  *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78
F.3d 1125, 1134 (6th Cir. 1996).  Reviewing a motion to dismiss, the court must construe
the complaint in the light most favorable to the plaintiff, accept all factual allegations as
true, and "determine whether the complaint contains 'enough facts to state a claim to
relief that is plausible on its face.'"  *Bledsoe v. Cmty. Health Sys.*, 501 F.3d 493, 502 (6th
Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 127 S. Ct 1955, 1974
(2007)).

Summary judgment pursuant to Federal Rule of Civil Procedure 56(c) is
appropriate if "the pleadings, the discovery and disclosure materials on file, and any
affidavits show that there is no genuine issue as to any material fact and that the movant
is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c).  The central inquiry is
"whether the evidence presents a sufficient disagreement to require submission to a jury
or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v.
Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986).  After adequate
time for discovery and upon motion, Rule 56(c) mandates summary judgment against a
party who fails to establish the existence of an element essential to that party's case and
on which that party bears the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S.

2

317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. at 2553. Once the movant meets this burden, the "nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (quoting Fed. R. Civ. P. 56(e)). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255, 106 S. Ct. at 2513.

## II.    Factual and Procedural Background

The United States Postal Service ("Postal Service") hired Plaintiff as a Motor Vehicle Operator (or "MVO") on July 8, 1995. On June 25, 1995, prior to starting work, Plaintiff underwent a medical exam conducted by a Postal Service physician. Although Plaintiff had poor vision in his right eye (20/400) resulting from an accident several years earlier, that fact did not preclude him from working as a Motor Vehicle Operator because the Postal Service did not adhere to any specific regulations regarding vision requirements at that time. After he began his employment, Plaintiff was assigned to the Detroit Vehicle Maintenance Facility and drove heavy trucks for approximately ten months.

3

In late 1995 or early 1996, however, Postal Service officials in the Detroit District implemented a new policy pursuant to which certain Department of Transportation ("DOT") requirements for commercial motor vehicle drivers were adopted.  Pursuant to this policy, employees driving heavy trucks were required to have standard DOT commercial driver's license ("CDL") physical exams at least every two years. Commercial motor vehicle drivers at the Detroit facility therefore were ordered to undergo a DOT CDL physical.

Plaintiff's physical exam occurred on March 14, 1996.  As a result of the vision impairment in his right eye, Plaintiff did not meet the vision standards required under DOT regulations to drive commercial vehicles.  The Postal Service therefore informed Plaintiff that he no longer could drive heavy trucks.  Plaintiff, however, retained his MVO position, his hourly rate of pay, and was assigned to other duties.  Plaintiff claims that he lost the ability to work overtime hours as a result of being removed from heavy truck-driving duties.

Believing that the Postal Service's actions constituted race and disability discrimination, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") against the Postal Service on August 21, 1996.  After a final decision by the EEOC and Plaintiff's exhaustion of his administrative remedies, he filed a lawsuit in this district court against the Postal Service, John E. Potter in his capacity as the Postmaster General, and the United States.  Plaintiff's case, Civil Action No. 02-70202, was assigned to the Honorable John Feikens.

4

On July 30, 2002, Judge Feikens issued an opinion and order dismissing Plaintiff's claims against the defendants. (Defs.' Mot. Ex. 1.) With respect to Plaintiff's discrimination claim, Judge Feikens held that Plaintiff failed to establish that he was qualified to drive heavy commercial motor vehicles. (*Id*. at 3.) Judge Feikens found that Plaintiff's vision does not meet the DOT regulations for driving heavy vehicles and that the "intra-city zone" exemption asserted by Plaintiff to demonstrate his eligibility is inapplicable to the Postal Service. (*Id*. at 3-4.)

After removing Plaintiff from driving heavy trucks, the Postal Service found other work for him to perform. For a while, he drove lighter (i.e. two-ton) trucks. When the two-ton truck that Plaintiff had been driving was removed from the Detroit facility fleet in Fall 2006, Plaintiff was assigned to work, as needed, as a radio operator in the facility's Transportation Dispatch Office. In this job, Plaintiff worked under the supervision of Mildred Vick-Tatum, Supervisor of Transportation Operations.

Plaintiff alleges in his complaint that Ms. Vick-Tatum "began a pattern of harassment culminating in allegations that his cell phone rang 'incessantly' and was too 'loud' and led to missed transmissions in the dispatch facility." (Am. Compl. ¶ 29.) The cell phone incident began on September 20, 2007, when Ms. Vick-Tatum told Plaintiff that his cell phone ringer was too loud and interfered with her ability to hear radio transmissions. (Defs.' Mot. Ex. 6 ¶ 4.) Ms. Vick-Tatum asked Plaintiff to lower the volume or turn off the ringer and change the phone's setting to "vibrate." (*Id*.) Plaintiff agreed; however, for several days thereafter (October 4, 5, 9, and 10, 2007) his cell phone

rang two to four times during his night shift at a high volume in close proximity to Ms.

Vick-Tatum.  (*Id.* ¶ 7.)

On October 10, 2007, Ms. Vick-Tatum called Transportation Manager Angela

Canfield and informed her of the problems she was having with Plaintiff.  (*Id.* ¶ 8.) Ms.

Canfield told Ms. Vick-Tatum to send Plaintiff home if he continued to refuse

instructions.  (*Id.*; Ex. 7 at 32-44.)  The next day, October 11, when Plaintiff's cell phone

rang again, Ms. Vick-Tatum again instructed Plaintiff to lower the volume or end his tour

and leave the facility.  (*Id.* Ex. 6 ¶ 9.)  When Plaintiff ignored Ms. Vick-Tatum and

returned to his work area, she contacted the Postal Service Police to escort Plaintiff out of

the facility.  (*Id.*)

Plaintiff returned to work the following day.  On that day, October 12, 2007, John

Riley, a manager at the Detroit facility, obtained a two-ton truck for Plaintiff to drive.

(*Id.* Ex. 8 ¶ 3.)  He assigned Plaintiff a route that was scheduled from 2:00 p.m. to 6:30

p.m., and Kristal Leverett, a supervisor, was assigned to oversee Plaintiff.  (*Id.* ¶¶ 3, 4.)

Plaintiff did not return to the Detroit facility until 7:45 p.m., over an hour later than

scheduled.  (*Id.* ¶ 9.)  Ms. Leverett had tried to radio Plaintiff during his route, but he had

not responded.  (*Id.* ¶ 8.)  When Plaintiff returned to the Detroit facility, he refused to

explain the reason for his delay.  (*Id.* ¶ 9.)  Believing that Plaintiff was a light-duty

employee who could be sent home when there was no work available, Ms. Leverett

instructed Plaintiff to clock out and end his tour for the day.  (*Id.* ¶ 10.)

The term "light-duty employee" is used by the Postal Service to describe

6

employees who are injured outside the scope of their employment and, due to their injury, are unable to perform their jobs.  (*See* Defs.' Mot. at 5 n.3; Ex. 4 at 27.)  The Postal Service has no obligation to provide work to light-duty employees during their rehabilitation and can send them home when there is no work to do.  (*Id*.)  In contrast, the Postal Service uses the term "limited-duty employee" to describe employees injured on the job who are rendered unable to perform their duties.  (*Id*.; Ex. 4 at 28.)  The Postal Service must provide full-time work to limited-duty employees during their rehabilitation.[1]  (*Id*.)

Plaintiff filed grievances with his union in response to being sent home early on October 11 and 12, 2007.  On October 31, 2007, the grievances were resolved by way of a Settlement Agreement that provided Plaintiff with a lump-sum payment for the pay he missed as a result of being sent home early.  Based on the October 11 and 12 incidents, Plaintiff also filed an informal EEOC complaint on November 4, 2007.

A mediation session was held to address Plaintiff's EEOC complaint on December 6, 2007.  Plaintiff alleges in his complaint that Ms. Vick-Tatum referred to him as "old" during this session.  (Am. Compl. ¶ 37.)  Around this time, Ms. Canfield was sending e-mails to her supervisors in an attempt to find work suitable for Plaintiff because she believed he was "sit[ting] around 8 hours a day and DO[ING] NOTHING . . .."  (Pl.'s

---

[1]According to Defendants, Plaintiff does not fall neatly into either category because he was not injured after he was employed.  Instead, Plaintiff's vision already was impaired when he was hired by the Postal Service.

Resp. Ex. H (emphasis in original); Am. Compl. ¶ 36.)  A District Reasonable Accommodation Committee ("DRAC") meeting was held on December 13, 2007, to discuss Plaintiff's classification.  Believing that the meeting was an attempt to re-classify Plaintiff as a light-duty employee, he filed another EEOC complaint on December 25, 2007, claiming that the meeting was discriminatory. Eventually Plaintiff's complaints were adjudicated and a finding of no discrimination was issued.

On August 26, 2008, Plaintiff underwent a new physical examination at the Midwest Health Center, a contract examining facility for the Postal Service in the Detroit District.  The examining doctor provided Plaintiff with a document stating that he could drive trucks in certain instances.  However, Dr. Nisha Parulekar, Associate Area Medical Director for the Postal Service in the Detroit District, refused to approve the document, as she believed after contacting the examining doctor at the Midwest Health Center that he had not followed DOT regulations.  (Defs.' Mot. Ex. 3 ¶ 9.)  Nevertheless, the Postal Service began allowing Plaintiff to drive heavy trucks again on or about September 5, 2008.

On March 25, 2009, the Postal Service realized its mistake and removed Plaintiff from driving the following day.  Plaintiff then filed several new EEOC complaints alleging discrimination.  Following a final agency decision dismissing the complaints, Plaintiff filed the pending lawsuit.

## III.    Defendants' Arguments and Plaintiff's Response

In the pending motion, Defendants seek dismissal of any state-law claims that

Plaintiff may be pursuing[2] and argue that the Postal Service is not a proper defendant. Defendants seek summary judgment with respect to Plaintiff's discrimination, hostile work environment, and retaliation claims, contending that there is no evidence to support these claims.

In response to Defendants' motion, Plaintiff indicates that he is not, and concedes that he can not, allege any state law claims against Defendants. (Pl.'s Resp. at 14.) Plaintiff objects to the dismissal of the Postal Service, however, contending that there is a split of authority with respect to whether it can be named as a defendant. Finally, Plaintiff contends that there is evidence to support his discrimination, hostile work environment, and retaliation claims.

---

[2]Although Plaintiff appears to be asserting only federal claims, he does cite Michigan statutes in the complaint. (*See* Am. Compl. ¶ 5.)

9

IV.     **Applicable Law and Analysis**

A.      **Whether the Postal Service is a Proper Defendant**

Contrary to Plaintiff's assertion, there is no split of authority with respect to whether the Postal Service is a proper defendant in a civil action alleging employment discrimination.  The only case Plaintiff cites, a 2006 decision by Judge Robert H. Cleland in this District, held that the Postmaster General was the only proper defendant and Judge Cleland therefore dismissed the Plaintiff's lawsuit against the Postal Service.  *McGhee v. United States Postal Service*, No. 06-10337 (E.D. Mich. June 30, 2006), *aff'd,* No. 06-2037 (6th Cir. Mar. 9, 2007).  This is consistent with decisions of this Court and the Sixth Circuit Court of Appeals.  *See, e.g., Stiles v. Frank*, No. 91-5454, 1992 WL 188111, at *1 (6th Cir. Aug. 6, 1992) ("only the head of a department or agency may be named as a defendant in a civil action brought to redress employment discrimination practices involving a federal agency"); *Lenton v. Bruce*, No. 09-10975, 2009 WL 2222580, at *1 (E.D. Mich. July 22, 2009).  The Court therefore grants Defendants' motion to dismiss Plaintiff's claims against the Postal Service.

B.      **Age Discrimination**

The ADEA prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . ."  29 U.S.C. § 623(a)(1).  A plaintiff may establish a violation of the ADEA by either direct or circumstantial evidence.  *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 410 (6th Cir. 2008).  Regardless of whether direct or

10

circumstantial evidence is used, the burden of persuasion remains with the plaintiff to demonstrate "that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Serv., Inc.*, – U.S. –, 129 S. Ct. 2343, 2351 and n.4 (2009).

Plaintiff lacks admissible direct evidence of age discrimination. The Sixth Circuit has defined direct evidence as "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions."[3] *Jacklyn v. Schering-Plough Healthcare Prods., Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). "[D]irect evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice." *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003)

Plaintiff points to Ms. Vick-Tatum's alleged reference to him as "old" during a mediation session; however, Plaintiff concedes that her statement is inadmissible. (Pl.'s Resp. at 16 n.4.) Plaintiff contends that "there are other incidents evidencing Ms. Vick-Tatum's animus." (*Id.*) He further claims that "the direct discrimination was so pervasive by USPS Management and decision makers that they cannot be considered stray remarks." (*Id.* at 16.) Yet the statements which he then cites– which cannot be described as pervasive– do not suggest any animus based on Plaintiff's age, are not

---

[3]*Jacklyn* was a state-law discrimination case and, like a Title VII action, the plaintiff only had to show "that unlawful discrimination was at least a motivating factor in the employer's actions." 176 F.3d at 926. Based upon the Supreme Court's decision in *Gross*, this Court believes that in an ADEA case, the direct evidence must demonstrate "that age was the 'but-for' cause of the challenged employer decision," 129 S. Ct. 2343, 2351 and n.4 (2009), not that it was simply "a motivating factor."

11

attributable to Ms. Vick-Tatum or any individual who took an alleged adverse actions

against him,  and/or the statements require a factfinder to draw inferences in order to

conclude that "age was the 'but-for' cause of" any adverse action.[4]

To evaluate an age discrimination claim based upon circumstantial evidence,

courts apply the burden-shifting framework articulated in *McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792, 802-05 (1973).  *Harris v. Metro. Gov't of Nashville and Davidson*

*Cmty.*, Nos. 08-6329, 08-6330, 2010 WL 393374, at *10 n.6 (6th Cir. Feb. 5, 2010); *see*

*also Martin*, 548 F.3d at 410.  The plaintiff first must establish a *prima facie* case of age

discrimination by showing: 1) he was a member of the protected class; 2) he was

subjected to an adverse employment action; 3) he was qualified for the position; and 4) he

was replaced by someone outside the protected class.  *Martin*, 548 F.3d at 410 (citing

*Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 349 (6th Cir. 1997)).  A plaintiff

alternatively can satisfy the last prong "by showing that []he 'was treated differently from

similarly situated employees outside the protected class.'"  *Id.* (quoting *Mitchell v.*

---

[4]Specifically, Exhibit U is a summary Ms. Vick-Tatum prepared "of the responses
to inquires [sic] regarding Mr. Barton [sic] status, results of attempts to supervise him,
and examples of his conduct while being accommodated."  (Pl.'s Resp. Ex. U.)  There is
only one reference to Plaintiff as being "old" in this document and that reference is a
quote from Jack Leich "of Labor."  (*Id*. at 1 ¶ 3.)  Exhibit H is a string of emails between
Ms. Canfield, labor relations, and human resources.  (*Id*. Ex. H.)  While the emails
contain complaints regarding Plaintiff's work activity, there are no references to his age.
(*Id*.)  Finally, Exhibit S is an affidavit from Postal Service employee Kermit Chatman,
who attended a DRAC meeting on March 26, 2009.  (*Id*. Ex. S ¶¶ 1, 4.)  Mr. Chatman
states that Dr. Parulekar commented during the meeting that Plaintiff "was too old and he
should just try to get a disability retirement."  (*Id*. ¶ 7.)

*Vanderbilt Univ.*, 389 F.3d 177, 181 (6th Cir. 2004)).

If the plaintiff establishes a prima facie case of age discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment action.  *Id.* (citing *Kline*, 128 F.3d at 342).  The plaintiff then must show "'that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 143, 120 S. Ct. 2901, 2106 (2000) (quoting *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089 (1981)).

Plaintiff is not able to demonstrate a *prima facie* case of age discrimination.  First, Plaintiff is not qualified to drive heavy trucks as a result of his vision impairment. Pursuant to DOT regulations, to be qualified to drive a commercial motor vehicle, drivers must have vision of, or correctable to, at least 20/40 (Snellen) in each eye or better, and must have distant binocular activity of at least 20/40 (Snellen) in both eyes with or without corrective lenses.  (Defs.' Mot. Ex. 1 at 2 (citing 49 C.F.R. § 391.41(b)(10).) Plaintiff undisputably has vision of 20/400 in his right eye.  (*See* Pl.'s Resp. at 3.)

Plaintiff argues that the intra-city zone exemption is applicable to his case, thus rendering him qualified.  (Defs.' Mot. at 22.)  The doctrine of collateral estoppel, however, bars Plaintiff from re-litigating this issue.  Contrary to Plaintiff's reading, Judge Feikens held in dismissing Plaintiff's previous lawsuit that "this [the intra-city zone] exemption is inapplicable to the [Postal Service]."  (*Id*. Ex. 1 at 4 (citing 49 C.F.R. § 390.3(f).)  49 C.F.R. § 390.3(f) provides that, "[u]nless otherwise specifically provided,

13

the rules in this subchapter do not apply to . . . [t]ransportation performed by the Federal government . . ..."  What this Court finds perplexing is that, according to Judge Feikens, Plaintiff's counsel (who also is Plaintiff's counsel in the present matter) "admitted at the hearing on [the defendant's] motion" that "this exemption is inapplicable to the USPS [Postal Service]".  (Defs.' Mot. Ex. 1 at 4.)

Plaintiff's counsel argued at the February 3 motion hearing that what he was admitting to in the earlier case was that Plaintiff, when that case was adjudicated, had not applied for the intra-city zone exemption.  Plaintiff's counsel contended that Judge Feikens held that Plaintiff was not qualified to drive heavy trucks *only* because Plaintiff had failed to apply for the exemption at that point in time.  Plaintiff's counsel further claimed that during the previous litigation and until Defendants filed their pending motion, the issue always has been whether Plaintiff satisfied the standards for the intra-city zone transfer and not whether the exemption is applicable.

Taking counsel's last argument first, in their motion to dismiss or for summary judgment filed in Judge Feikens' case, the defendants expressly argued that the intra-city zone exemption does not apply to the Postal Service.  *Barton v. Potter*, No. 02-70202, at *13 (E.D. Mich. June 3, 2002), Doc. 4 ("Even if Plaintiff were entitled to raise the 'intra-city zone' exemption . . . Plaintiff is not entitled to the exemption because it does not apply to the USPS.")  In their Answer to Plaintiff's pending complaint, Defendants also deny that the exemption has any application in this matter.  (Doc. 9 ¶¶ 18-19.)

As to the remaining arguments of Plaintiff's counsel, the Court finds it impossible

14

to read Judge Feikens's opinion in the manner counsel suggests. In the opinion, Judge Feikens concludes that Plaintiff is not qualified to drive heavy trucks because he fails to meet DOT vision requirements and that he, therefore, fails to establish the second requirement of his *prima facie* case (i.e. that he is qualified for the position). (Defs.' Mot. Ex. 1 at 3-4.) Judge Feikens then addresses Plaintiff's argument that he is qualified pursuant to the intra-city zone exemption. (*Id*. at 4.) Judge Feikens clearly holds first that "this exemption [i.e. the intra-zone exception] is inapplicable to the USPS." (*Id*. at 4.) He then holds as an *additional* basis for rejecting Plaintiff's argument that, "*[e]ven if the exemption were applicable*, plaintiff did not apply for the exemption as required." (*Id*. (emphasis added).)

The Court therefore concludes that Plaintiff fails to demonstrate that he is qualified for a heavy duty truck driver position.[5]

Plaintiff also claims that he suffered an adverse employment action when he was placed in a light-duty assignment. There are no facts, however, indicating that he was placed in such an assignment. Ms. Vick-Tatum and Ms. Leverett incorrectly believed that Plaintiff was a light-duty employee when they sent him home early on October 11 and 12, 2007; however, those actions were subsequently resolved through the grievance process and Plaintiff was compensated for his lost time. (Defs.' Mot. Ex. 5 at Ex. 12; Ex. 9 ¶ 4.)

_____

[5]The fact that Plaintiff was granted clearance to drive heavy trucks before the regulations were followed by the Postal Service in the Detroit area (*see* Defs.' Mot. Ex. 3 ¶ 6; Ex. 4 at 31), and later by a physician who had not followed DOT regulations, does not change the fact that he in fact is not qualified. (*Id*. Ex. 3 ¶ 9.)

While DRAC meetings may have been convened to discuss Plaintiff's status, there is no evidence that those meetings ever resulted in his re-classification as a light-duty employee.

Plaintiff also claims that Ms. Vick-Tatum subjected him to disparate treatment with respect to his cell phone. In addition to the fact that there is no evidence suggesting that Plaintiff's age had anything to do with Ms. Vick-Tatum's actions, Plaintiff offers no evidence to support his claim that a younger employee was treated differently by Ms. Vick-Tatum. Additionally, as set forth in the preceding paragraph, Plaintiff did not suffer an adverse employment action because he was compensated for the wages he lost as a result of being sent home early.

Lastly, Plaintiff contends that he was subjected to an adverse employment action when he was removed from driving heavy trucks. As discussed above, however, Plaintiff is not qualified to drive heavy trucks pursuant to DOT regulations as a result of his vision impairment.

For the above reasons, the Court concludes that Plaintiff fails to present evidence to create a genuine issue of material fact with respect to his age discrimination claim under the ADEA. Accordingly, the Court holds that Defendants are entitled to summary judgment with respect to this claim.

### C.    Harassment and Hostile Work Environment

"A hostile work environment occurs 'when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to

16

alter the conditions of the victim's employment and create an abusive working environment.'" *Viergutz v. Lucent Technologies, Inc.*, 375 Fed. App'x 482, 485 (6th Cir. 2010) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367 (1993) (internal quotations and citations omitted)). "To advance a hostile work environment claim under the ADEA, [the plaintiff] must show that he was 'subjected to harassment . . . based on age.'" *Id.* (quoting *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834 (6th Cir. 1996)).

Plaintiff fails to demonstrate that he was subjected to severe or pervasive harassment. He also fails to present evidence to create a genuine issue of material fact with respect to whether any harassment was based on his age. To the contrary, the evidence suggests that any harassment of Plaintiff was due to his placement in a job category– i.e. Motor Vehicle Operator– for which the Postal Service was unable to find sufficient work to keep Plaintiff busy because he was not qualified to drive heavy trucks. (*See, e.g.*, Pl.'s Resp. Ex. H.)

For these reasons, the Court holds that Defendants are entitled to summary judgment with respect to Plaintiff's harassment and hostile work environment claim.

**D.     Retaliation**

In order to state a *prima facie* case of retaliation under the ADEA, a plaintiff must show: (1) engagement in a protected activity; (2) the defendant's knowledge of the protected conduct; (3) an adverse employment action by the defendant against the plaintiff; and (4) a causal connection between the protected activity and the adverse

17

employment action. *Fox v. Eagle Distrib. Co.*, 510 F.3d 587, 591 (6th Cir. 2007) (citing

*Weigel v. Baptist Hosp. of East Tennessee*, 302 F.3d 367, 381 (6th Cir. 2002)).  "To show

causation, 'a plaintiff must produce sufficient evidence from which an inference could be

drawn that the adverse action would not have been taken' in the absence of the protected

conduct."  *Weigel*, 302 F.3d at 381 (quoting *Nguyen v. City of Cleveland*, 229 F.3d 559,

563 (6th Cir. 2000)).

The Sixth Circuit has provided that, because Title VII's anti-retaliation provision is

similar in relevant respects to the ADEA's anti-retaliation provision, cases construing

Title VII are an appropriate source of authority for interpreting the ADEA's

anti-retaliation clause.  *Id.* (citing *Wathen v. General Electric*, 115 F.3d 400, 404 n.6 (6th

Cir. 1997)).  Consistent with Title VII, once a plaintiff establishes a *prima facie* case of

retaliation under the ADEA, the defendant must come forward with a non-discriminatory

reason for its actions.  *See Weigel*, 302 F.3d at 381-82.  If the defendant does so, to

prevail, the plaintiff must show that the defendant's stated reasons are pretextual.  *See id.*

In his brief in response to Defendants' motion for summary judgment, Plaintiff

identifies the following as retaliatory actions:

1) the refusal of attendees at DRAC meetings to accept Plaintiff's
commercial driver's license as proof that he is able to drive heavy trucks;

2) working him outside of his MVO job classification by having him
perform tasks primarily as a radio operator;

3) management encouraging Plaintiff's supervisors to treat him as a light-
duty employee and maintaining that he is not able to drive heavy trucks;

18

4) holding a DRAC meeting to change Plaintiff's work status to light-duty
when he was qualified to drive heavy trucks;

5) removing Plaintiff from the road in August 2008 after being approved to
drive heavy trucks;

6) denying Plaintiff overtime compensation afforded to full-time MVO
employees by refusing to allow him to drive heavy trucks;

7) Ms. Canfield and "other management employees" making disparaging
and insulting remarks towards Plaintiff; and

8) Management's shifting explanations as to Plaintiff's ability to drive
heavy duty trucks.

(Pl.'s Resp. at 27-28.)[6]  Most of the actions identified by Plaintiff relate to his ability or

inability to drive heavy duty trucks.  Before Plaintiff ever engaged in protected conduct,

however, the Postal Service concluded that he is not able to drive heavy duty trucks.

Thus Plaintiff cannot establish the necessary causal connection to demonstrate a *prima*

*facie* case of retaliation.  Moreover, as discussed earlier, Plaintiff is not qualified to drive

heavy duty trucks.  He therefore cannot demonstrate that the Postal Service's action in

removing him from this task was a pretext for retaliation.

The remaining actions alleged by Plaintiff do not support a *prima facie* case of

retaliation.  This Court already has discussed Plaintiff's claim that he suffered an adverse

employment action by being treated as a light-duty employee.  He was not classified as a

light-duty employee and on the two occasions when he mistakenly was treated as one, he

---

[6]Plaintiff's list contains nine instances of retaliatory conduct.  The Court combined
the two DRAC meetings where Plaintiff alleges the same response to his documentation
which he argues demonstrated his ability to drive heavy trucks.

subsequently was compensated for the resulting harm.  Plaintiff fails to present evidence

to suggest that any disparaging, insulting remarks, were casually connected to any

protected conduct.  Additionally, such remarks do not constitute "materially adverse"

conduct sufficient to support his claim.  *See Burlington N. and Santa Fe Ry. Co. v. White*,

548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006) (holding that, to support a retaliation claim,

"a plaintiff must show that a reasonable employee would have found the challenged

action materially adverse, which in this context means it well might have dissuaded a

reasonable worker from making or supporting a charge of discrimination") (internal

quotation marks and citations omitted).

 The Court therefore holds that Defendants are entitled to summary judgment with

respect to Plaintiff's retaliation claim.

## V. Conclusion

 For the reasons set forth above, the Court holds that the Postal Service is not a

proper defendant to this action and must be dismissed.  The Court also holds that Plaintiff

fails to present a genuine issue of material fact to support his age discrimination, hostile

work environment, and retaliation claims.

 Accordingly,

 **IT IS ORDERED**, that Defendants' motion to dismiss and for summary judgment

is **GRANTED**.

     s/PATRICK J. DUGGAN
     UNITED STATES DISTRICT JUDGE

Copies to:
BenjaminWhitfield, Jr., Esq.
Kenneth L. Shaitelman, Esq.